IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,
        PLAINTIFF,

vs.                                                    Case No. 5:21-CR-40105-TC

MONTRESSA CUNNINGHAM,
        DEFENDANT.

### GOVERNMENT'S SENTENCING MEMORANDUM

Comes Now, the United States of America, by and through Assistant United States Attorneys, Sara L. Walton and Lindsey Debenham, and respectfully submits the following in support of the government's recommended sentence of the high end of the applicable Guideline range (57 months), followed by three (3) years of supervised release, restitution in the amount of $242,783.84, and the $100 special assessment. The government contends that a sentence of 57 months is sufficient but not greater than necessary to meet the objectives outlined in 18 U.S.C. § 3553(a).[1]

I.    SENTENCING IN GENERAL

As a matter of administration and to secure nationwide consistency in sentencing, the Guidelines should be the starting point and the initial benchmark for sentencing. *See Rita v. United States*, 551 U.S. 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). However, the Guidelines are not the only consideration. *See United States v.*

---

[1] If the Court sustains the defendant's objections to the PSR, the government's recommendation is the high end of the amended calculated Guideline range.

*Booker, 43* U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d. 621 (2005). The sentencing court must engage in a three-part analysis to determine the appropriate sentence. First, the court must consider the Guideline range. A sentence within the guideline range is presumed reasonable. *United States v. Kristle*, 437 F.3d 1050, 1055 (10th Cir. 2006).

Second, the court must address any grounds for departure provided in the policy statements. A departure is a deviation from the calculated guidelines range based on the enumerated departure provisions in the Guidelines Manual. On the other hand, a variance occurs when the district court deviates from the guidelines range based on the sentencing factors in 18 U.S.C. § 3553(a) and the court's responsibility to impose a sentence that is "sufficient" but "not greater than necessary" to meet the sentencing objectives in that provision. *United States v. Kaspereit*, 994 F.3d 1202, 1214 (10th Cir. 2021)(internal citations omitted). See also 2021 Guidelines Manual, § 1B1.1, pg. 17-18.

Third, the court last considers the factors under 18 U.S.C. § 3553(a). *See Rita*, 551 U.S. at 351. 18 U.S.C. § 3553(a) provides seven statutory factors for the court to consider to impose a sentence that is sufficient, but not greater than necessary: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes and provide rehabilitation; (3) the sentences that are legally available; (4) the sentencings guidelines; (5) the Sentencing Commission's policy statements; (6) the

need to avoid unwarranted sentence disparities; and (7) the need for restitution. The sentencing court can and should engage in a holistic inquiry of these factors. *United States .v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014).

On appellate review, the court applies a two-step process. First, the court confirms the district court correctly calculated the Guideline range. Second, the court examines under an abuse of discretion standard, the substantive reasonableness of the sentence, considering the totality of the circumstances including the extent of any variance from the Guideline's. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).

## II.  THE PSR CORRECTLY CALCULATED THE GUIDELINE SENTENCING RANGE.

The defendant objects to the Guideline calculation in the PSR, as well as the amount of restitution. The government provided its response to those objections and incorporates its arguments by reference to the PSR (Doc. 159, pgs. 26-38).[2]

## III.  NO GROUNDS FOR DEPARTURE ARE PRESENT.

Neither party is seeking a departure from the Guideline sentence based on policy statements.

## IV.  ARGUMENTS IN SUPPORT OF THE GOVERNMENT'S RECOMMENDED SENTENCE OF 57 MONTHS.

A sentence of 57 months is sufficient but not greater than necessary to achieve the sentencing objectives reflected in 18 U.S.C. § 3553(a).

---

[2] Attached to the government's response is an excel chart provided along with the government's objections based on the available financial/loss calculation available at the time of submission. The government submits the correct calculation for loss is INTENDED LOSS and therefore, the credits against loss are irrelevant. The final restitution chart is included in this motion on page 14.

3

1. **The nature and circumstances of the offense and the history and characteristics of the defendant.**

The Court should consider the nature and circumstances of the offense and the history and characteristics of the defendant.

   A. *Nature and Circumstances of the Offense*

The defendant's conduct deserves stringent punishment and weighs in favor of the government's request for a 57-month sentence. As the evidence presented at trial reflects, the defendant engaged in a scheme to defraud car dealerships, financial institutions, county treasurers, and short-term title loan companies. The scheme was systematic and exploited the weakness in the indirect lending and vehicle title systems.

At all stops along the day, the defendant misled and manipulated individuals to turn a quick profit and also access to luxury imported vehicles. The defendant applied for vehicle lending with false information, inflating his income, and concealing his identity. Loans he never intended on repaying. Based on the evidence presented at trial, the defendant did this seven times between late 2018 and early 2020 in the District of Kansas alone. The end of his scheme coinciding with the onset of the Covid 19 pandemic in March of 2020.

The defendant's scheme to defraud did not end when he drove off the dealership lot with a new vehicle. Rather, once the defendant received title documents from the dealership, he would alter the documents to remove the financial institution's lien on the vehicle. As evidenced at trial, he did this by physically manipulating the document by applying a liquid to the paper to remove

4

the ink. After removing the lien from the title document, he would select a county treasurers' office to present the altered documents to receive clear title. He would target a county treasure's office in a different state than the lien was recorded or at least a different county. This allowed the defendant to avoid the lien from being detected during the titling process.

With clear title in hand, the defendant was free to dispose of the vehicle or use it as collateral for additional loans. For two of the vehicles, the defendant and his co-conspirator sold the vehicles outright for cash in Georgia. For the other five vehicles, they received or attempted to receive, cash loans from short term title loan companies, using the vehicles as collateral. When applying for these loans, the defendant provided false information and manipulated the title clerks.

Over the course of the scheme and in just over a year, the defendant's intended loss was $291,731.21. From the short-term title loans in Kansas and Missouri, the defendant received $39,548 cash profit. In addition, the defendant sold two of vehicles for $45,462 cash profit.

B. *History and Characteristics of the Defendant*

From the information available in the PSR, it does not appear the defendant has significant physical or mental health concerns or a history a substance abuse or alcohol dependency. The defendant is a father to six children, three of which he shares with his wife and co-defendant. Despite this, the defendant utilized his wife's name to purchase vehicles in Kansas, while she remained in Georgia with the children.

As the evidence presented at trial and the information in the PSR suggests, the defendant has limited to ties to Kansas. He spent most of his life in the south, in Florida and Georgia. In 2018, he was in Kansas with his girlfriend, who was an active-duty soldier, stationed at Fort Riley. He otherwise had no other ties to the State of Kansas. However, while in Kansas, the defendant traveled thorough the state to facilitate the offenses in this case. In early 2020, he returned to his family in Georgia.

A simple Google search for the defendant, or his alias, Monte Millions, reveals an individual highly involved in branding his own name and giving the appearance of success and wealth. Absent from the PSR is any information related to the defendant's career as a recording artist, an author of adult self-help books and children's books, his employment as an ambassador and model for Quiet Storm Vodka or his charitable foundation, the Mont'e Million Foundation. Articles on online publications highlight the defendant's success in the ministry, authorship and public speaking. During the course of this scheme to defraud, the defendant posted the below image to his Instagram account:



using his own criminal acts to further his public image by flaunting at least one, if not more, of the fraudulently purchased vehicles.

Yet, the information reported in the PSR appears to underreport the defendant's entrepreneurial endeavors. The defendant reported a monthly income of $3,000 and his wife's monthly income was reported at $6,000, yet the average monthly expenses for the family is nearly $25,000. Either the defendant's branding of himself is smoke and mirrors or he underreported to USPO, neglecting to provide any information related to his musical career, literary career, or numerous other ventures. Ultimately, without accurate information, the Court cannot assess the defendant's ability to repay the victims of his crimes. (Doc. 159, pgs. 18-20).

The defendant's criminal history score is 0 and he benefited from the adoption of §4C1.1(a) and received an additional 2-point reduction in his offense

level, however, the government contends his history of fraudulent of behavior gives upward pressure on his sentence and warrants a sentence at the high of the Guideline range. The defendant's criminal history reflects a pattern of criminal behavior starting in 1998, with convictions for grand theft, several worthless check convictions and arrests, forgery, and arrest for fraudulent use of a credit card. (Doc. 159, pgs. 10-16). The government recognizes that these convictions are over 20 years old. However, in the context of the current offense, such prior acts demonstrate a long-standing pattern of fraudulent behavior and a willingness to exploit and manipulate others for his own financial gain.

2. **The need for a sentence to reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes and provide rehabilitation.**

The sentence must reflect the seriousness of the crime, deter future criminal conduct, prevent the defendant from committing more crimes and provide rehabilitation. A 57-month sentence reflects the seriousness of the crime, the need for deterrence, and just punishment.

A. *Seriousness of the Crime*

This was not a crime of convenience nor a crime of necessity. This was not an isolated event. The defendant engaged in a series of offenses that involved planning and knowledge of industry procedures. Though the victims of the offenses were businesses or government agencies, the seriousness of the defendant's conduct is not diminished. Many of the witnesses at trial testified to the resources, such as time and personnel, dedicated to locate and recover the vehicles to cover financial loss. The relationships between the dealerships and the lenders suffered as a result of the

defendant's actions.

### B. *Deter Future Criminal Conduct*

To effectuate the scheme to defraud, the defendant manipulated, lied, and exploited others for his own financial gain. The Court is in a position to send a message that this type of behavior cannot be tolerated and is a threat to the financial safety of individuals and businesses.

### C. *Prevention and Rehabilitation*

A 57-month sentence will protect the public from further crimes of the defendant and provide the defendant with the resources and opportunity for rehabilitation.

From the evidence presented at trial and the information provided in the PSR, this appears to be an offense motivated by greed or the desire to maintain a public image. The defendant has yet to demonstrate any remorse for his actions nor accept any responsibility for his role in the offense. Quite the opposite, the defendant showed disrespect and indifference to the Court when he arrived late on multiple occasions, including after the jury was impaneled. A 57-month term of imprisonment will demonstrate to the defendant that it is unacceptable to violate federal law for a quick profit.

Additionally, a 57-month term of imprisonment will provide the defendant with access to resources to aid in rehabilitation. The defendant does not report a history of drug or alcohol dependence necessitating treatment nor does he have any diagnosed mental health concerns. However, the defendant may still benefit from

resources provided by the Bureau of Prisons, such as cognitive behavioral therapy, programs addressing criminal thinking, and a family programming series.

Such sentence also reflects the seriousness of the crime, the need for deterrence, and just punishment.

**3. The sentences that are legally available.**

The government is recommending a custodial sentence as the defendant is ineligible for probation because Counts 1 through 8 are class B felonies (Doc. 159, pg. 21, ¶¶ 100 and 101).

**4. The sentencing Guidelines.**

The Guidelines provide for a sentencing range of 46 to 57 months imprisonment (Doc. 159, pg. 21, ¶ 96). The government is requesting the Court the impose a high-end Guideline sentence of 57 months. A sentence at the high end of the Guideline range is appropriate to account for the defendant's history and the nature and circumstances of the instant offenses.

As previously noted, the defendant's criminal history is not taken into account in the Guideline range, yet is indicative of a long tradition of fraudulent behavior. Further, the defendant avoids the 2-level enhancement under U.S.S.G. §2B1.1(b)(2)(A) for an offense involving 10 or more victims because several of the exploited entities repossessed the collateral to offset their losses. Section 2B1.1(b)(2)(A) provides that a district court should increase the defendant's base offense level "by 2 levels" "[i]f the offense ... involved 10 or more victims...." 2B1.1(b)(2)(A). Application Note 1 to 2B1.1 defines the term "victim," in pertinent

part, as "any person who sustained any part of the actual loss determined under subsection (b)(1)," and further defines the term "person" to "include[ ] individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." *Id.*, cmt. n. 1.

The Tenth Circuit addressed the application of 2B1.1(b)(2)(A) in *United States v. Orr*, 597 F.3d 610 (2009). Application Note 3, by its own express terms, "applies to the determination of loss under subsection (b)(1)." As the Fifth Circuit recently recognized in *United States v. Conner*, 537 F.3d 480, 491 n. 38 (5th Cir.2008), the calculation of "loss" for purposes of § 2B1.1 is a "distinct concept" from the identification of "victims" for purposes of § 2B1.1, and "[w]e should not look to a separate provision of the Application Notes to create an ambiguity in the provisions relevant to defining 'victim,' when no ambiguity exists when looking at those provisions alone." *Id.* at 615-616. As reflected in the attached chart, many of the business the defendant exploited recouped their financial loss by repossessing the vehicles or filing insurance claims, removing the business from the U.S.S.G. §2B1.1(b) definition of victim. The defendant therefore benefited from the efforts of his true victims with a reduction in his appliable Guideline range.

Lastly, the U.S.S.G. considers a two to four level enhancement for an individual's aggravating role in the criminal activity. Section 3B1.1(c) applies if a defendant was an organizer, leader, manager, or supervisor in any criminal activity. In evaluating this enhancement, the court considers (1) the exercise of decision making authority, (2) the nature of participation in the commission of the offense,

(3) the recruitment of accomplices, (4) the claimed right to a larger share of the fruits of the crime, (5) the degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, (7) and the degree of control and authority exercised over others.

The enhancement is based on "the exercise of control over other participants or the organization of others for the purpose of carrying out the crime." *United States v. Marquez*, 833 F.3d 1217, 1222 (10th Cir. 2016), citing *United States v. Tagore*, 158 F.3d 1124, 1130-31 (10th Cir. 1998). An individual need only supervise one participant to qualify for the enhancement. *United States v. Astorga*, No. 21-2026, 2022 WL 17826058, at *3 (10th Cir. Dec. 21, 2022), citing *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1248-49 (10th Cir. 2004).

Commentary recognizes where this enhancement does not apply, an upward variance might apply. Section 3B1.1 cmt., n. 2. While the government does not seek a formal guideline enhancement, or an upward departure, the government does encourage the Court to consider this factor and impose a sentence at the high end of the Guideline range. The defendant drew his wife into the criminal activity, he utilized her information, registered vehicles in her name, and had her sign paperwork related to the vehicles. He took at least one of those vehicles and used it for collateral for a title loan. All of which assisted in furthering the criminal scheme. This demonstrates his exercise of control over others as well as his recruitment of others in the criminal scheme. The defendant was present for most, if not all, of the stages of the offense conduct, demonstrating his exercise of decision-making

authority, participation in the offense, and degree of planning. His use of the vehicles, social media posts, and his recipe of the cash profits from the vehicle demonstrate his apparent claim to the larger share of the fruits of the crime.

**5. The Sentencing Commission's policy statements.**

The Sentencing Commission's policy statements focus on the three Congressional objectives of the Sentencing Reform Act of 1984: (1) combat crime through an effective, fair sentencing system; (2) create reasonable uniformity in sentencing and (3) create proportionality in sentencing through a system that imposes appropriately different sentence for criminal conduct of differing severity. See 2023 Guidelines Manual, pg. 2-3. The imposition of a Guideline sentence reflects the policy statements.

**6. The need to avoid unwarranted sentence disparities.**

The Court must consider the need to avoid unwarranted sentence disparities.

**7. The need for restitution.**

The need for restitution is a factor the Court should consider. The government asserts that the Court should order restitution as follows:

| Financial Institution | Fraudulent Transaction |
|---|---|
| Intrust Bank | 2013 Mercedes loan for $28,148.95 |
| Wells Fargo Auto | 2015 Maserati loan for $44,963.75 |
| Credit Union of America | 2016 Lexus loan for $32,395.88 |
| Great Plains Credit Union | 2014 Land Rover loan for $53,917.63 |
| Dream Auto Group dba Lawrence Kia | 2012 BMW loan for $13,292.82 |
| Check Into Cash | $10,500.00 |
| Sentry Select Insurance Company | 2014 Mercedes loan for $15,902.23 |
| Sentry Select Insurance Company | 2015 Land Rover loan for $33,662.58 |
| Missouri Title Loans | 2014 Mercedes sale for $10,000.00 |
| **TOTALS** | **$242,783.84** |

As reflected in Doc. 159, pg. 32, ¶¶ 164 and 165), USPO agrees with the government's recommendation. The defendant has continued to object to the government's proposed restitution figures but has not, as the filing of this motion, provided an alternative calculation.

Based on the financial disclosure of the defendant in his PSR, the defendant's monthly expenses surpass his monthly income. The defendant is self-employed, therefore making garnishment quite difficult. The defendant cannot, without sacrificing current expenditures, pay towards restitution whether imprisoned or not.

V. <u>CONCLUSION</u>

A custodial Guideline sentence of 57-months is sufficient but not greater than necessary to account for the instant offense conduct and the defendant's pattern of behavior and achieve the sentencing objectives in 18 U.S.C. § 3553(a).

**WHEREFORE**, the government moves the Court to impose a sentence within the Guideline range, specifically, imprisonment for 57 months, a 3-year term of supervised release, and restitution in the amount of

Respectfully submitted,

KATE E. BRUBACHER
United States Attorney
District of Kansas

By: */s/ Sara L. Walton*

Sara L. Walton, KS Bar No. 24106
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
sara.walton@usdoj.gov

and

*/s/ Lindsey C. Debenham*

Lindsey C. Debenham
KS Bar No. 27574
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
lindsey.debenham@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this, I electronically filed the foregoing Memorandum with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Hunter Lindquist and Kirk Redmond
Assistant Federal Public Defenders

By: /s/ Sara L. Walton
Sara L. Walton, KS Bar No. 24106
Assistant United States Attorn